# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-5586-GW-PLAx | Date | August 19, 2019 |
|---|---|---|---|
| Title | *John Doe v. Wells Fargo Bank, N.A., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie E. Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Natasha R. Chesler | Theresa A. Kading |

**PROCEEDINGS:**   **PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES AND COSTS IN THE AMOUNT OF $4,900 [11]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would grant Plaintiff's Motion to Remand and would remand this action to Los Angeles County Superior Court forthwith. The Court would deny Plaintiff's request for attorney fees.

|  | : | 04 |
|---|---|---|
| Initials of Preparer | JG | |

## I. Background

### A. Introduction

Plaintiff John Doe ("Plaintiff") asserts state-law violations of the California Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12900 *et seq.*, against Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Joe Filippelli ("Filippelli"), and Does 1-10 (collectively, "Defendants") for: (1) sexual harassment; (2) retaliation for Plaintiff's opposition to Defendants' alleged FEHA violations; and (3) failure to prevent sexual harassment and retaliation.[1] *See generally* Plaintiff's Complaint ("Complaint"), Docket No. 1, Ex. A. Plaintiff also asserts a common-law claim for intentional infliction of emotional distress ("IIED"). *See id.*

### B. Factual Background

Plaintiff alleges the following relevant facts:

In approximately 2007, Plaintiff – a citizen of California – began working as a loan officer for Wells Fargo – a citizen of South Dakota. *See id.* ¶ 8; *see also* Defendants' Notice of Removal of Action to United States District Court Pursuant to 28 U.S.C. §§ 1332(a) and 1441 (Diversity) ("Notice of Removal"), Docket No. 1, at 7-8. In 2010, Wells Fargo – recognizing Plaintiff as a strong performer – promoted Plaintiff to Sales Manager in Beverly Hills. *See* Complaint ¶ 8. In 2011, Wells Fargo promoted Plaintiff to Branch Manager and placed him in charge of a mortgage sales team. *See id.* Part of Plaintiff's territory included the lucrative westside Los Angeles markets of Santa Monica, Pacific Palisades, and Brentwood. *See id.* Plaintiff was a top performer and ranked high among his peers and the nation. *See id.* Plaintiff was never reprimanded nor disciplined. *See id.* Plaintiff intended to continue building his career at Wells Fargo. *See id.*

In approximately August 2015, a group of the mortgage team operations and sales department organized a group fishing trip that Plaintiff and others attended. *See id.* ¶ 9. Plaintiff's co-worker, Filippelli – a citizen of California – placed his hand over Plaintiff's pants and squeezed Plaintiff's penis during a group photograph (the "2015 Photo Incident"). *See id.*; *see also* Notice

---

[1] For the purposes of this motion, only the sexual harassment and IIED claims are relevant because those are the only claims asserted against Filippelli. *See generally* Defendants' Notice of Removal of Action to United States District Court Pursuant to 28 U.S.C. §§ 1332(a) and 1441 (Diversity), Docket No. 1.

of Removal at 8-9. Plaintiff alleges that he was horrified and stunned, did not know what to do, and did not want to make a scene. *See* Complaint ¶ 9. Plaintiff subsequently obtained a copy of the photograph, which captured the incident. *See id.* Confused and bothered but concerned about retaliation and any disruption to his successful career due to Wells Fargo's alleged lack of tolerating such complaints, Plaintiff did not report the incident to Human Resources ("HR") at that time. *See id.*

In approximately May 2017, Fillippelli received a promotion and became Plaintiff's manager. *See id.* ¶ 10. Shortly after commencing the manager position, Fillippelli told Plaintiff "[d]on't forget I know you have that picture." *See id.* Plaintiff was concerned but did not do anything for fear of losing his job. *See id.* The resulting stress that Plaintiff experienced prompted Plaintiff to seek treatment. *See id.*

In approximately June 2017, the photograph resurfaced and was shared among employees. *See id.* ¶ 11. Consequently, someone turned it over to HR. *See id.* Nicole Hess from the HR department contacted Plaintiff to ask him about the photograph, and to ask him if he had been on a conference call during which Fillippelli allegedly had a conflict with another co-worker. *See id.* Plaintiff denied having been present on the conference call but confirmed the 2015 Photo Incident. *See id.* Plaintiff told Hess that it had bothered Plaintiff at the time, but that he chose not to report Fillippelli for fear of disrupting his own career. *See id.* Plaintiff told Hess that she should not tell Fillippelli that Plaintiff and Hess spoke about the photo, because Fillippelli would retaliate against Plaintiff. *See id.*

Shortly after Plaintiff spoke with Hess, Fillippelli told Plaintiff that he believed Plaintiff had reported him to HR. *See id.* ¶ 12. Fillippelli subsequently ceased attending Plaintiff's sales meeting and rarely visited Plaintiff's office, even though he was scheduled to be at Plaintiff's office on Mondays. *See id.* Fillippelli failed to follow through with prospective recruits that Plaintiff identified, and falsely took credit for recruiting two individuals to Plaintiff's team, both of whom Plaintiff recruited. *See id.* In approximately October 2017, Plaintiff reached out to Hess and explained that he felt Fillippelli was harassing Plaintiff in retaliation for – as Fillippelli believed – Plaintiff's reporting Fillippelli to HR. *See id.* ¶ 13. Hess told Plaintiff that Fillippelli's alleged harassment and retaliatory actions were "all in [Plaintiff's] head." *See id.* Hess subsequently informed Plaintiff that she had communicated Plaintiff's complaint to Fillippelli and put Plaintiff's complaint in Fillippelli's record. *See id.*

Between January-March 2018, Fillippelli allegedly entered Plaintiff's office and stated, "I have good news for you. You're gonna want to suck my dick" ("'suck' comment"). Plaintiff's Notice of Motion and Motion to Remand and Request for Attorneys' Fees and Costs ("MTR"), Docket No. 11 at 3, 9, 11; Plaintiff's Reply to MTR Opposition ("MTR Reply"), Docket No. 16 at 5. Fillippelli then proceeded to tell Plaintiff that a top-performing employee was being added to Plaintiff's team. MTR at 3-4. Plaintiff responded, "that was creepy."[2] *Id.* at 4. In approximately late February 2018, Fillippelli met with Plaintiff in person and proposed growing Plaintiff's downtown Los Angeles territory while reassigning Plaintiff's Brentwood office team to another Branch Manager in Manhattan Beach. *See* Complaint ¶ 14. Plaintiff expressed concern that the loss of his Brentwood business would result in lower income for Plaintiff, but Fillippelli reassured Plaintiff that he would continue to earn what he had in the past. *See id.* Fillippelli then convened a Branch Manager meeting on or about April 18, 2018, at which Fillippelli announced that Plaintiff's Brentwood group would be assigned to the Manhattan Beach team. *See id.* ¶ 16.

On April 19, 2018, Plaintiff met with Fillippelli to discuss the reorganization, and Fillippelli explained that Plaintiff would receive a new compensation package which included a 30-50% pay cut. *See id.* ¶ 17. Fillippelli explained that Plaintiff's previous three months of production was the reason for the pay cut, and that the Brentwood reassignment was to help Plaintiff focus on his downtown Los Angeles territory. *See id* ¶¶ 17-18. After Plaintiff articulated to Fillippelli that the pay cut was not what the two had previously discussed and that Plaintiff would have to go to HR again, Fillippelli told Plaintiff "not to make threats." *See id.* Plaintiff felt that Fillippelli had no legitimate basis to reassign Plaintiff's Brentwood team, given Plaintiff's ten-year tenure with Wells Fargo, his customer loyalty rate that was second-highest in the nation, and his office's top score (97.8%) on an annual inspection. *See id.* ¶ 18. On April 20, 2018, Plaintiff spoke with Hess about the reassignment and pay cut. *See id.* ¶ 19.

On May 22, 2018, Calvin Omtvedt from Employee Relations informed Plaintiff that an "objective third party" would conduct a "second level review" of Plaintiff's complaint, though a third party never contacted Plaintiff for an interview. *See id.* ¶¶ 19, 24. Meanwhile, Fillippelli refused to allow Plaintiff's assistant to attend market meetings and met directly with Plaintiff's

---

[2] Plaintiff's allegations that Fillippelli entered his office and made the "suck" comment, told him that a top-performing employee was being added to Plaintiff's team, and Plaintiff's "that was creepy" reply do not appear in the Complaint. Plaintiff alleges in a declaration that he will add these facts to an amended complaint. *See* Plaintiff's Notice of Motion and Motion to Remand and Request for Attorneys' Fees and Costs, Docket No. 11 at 3.

subordinates. *See id.* ¶ 21. On May 21, 2018, Plaintiff learned that a team member had nominated Plaintiff for a Leadership Excellence Award, but Fillippelli had thwarted the award by refusing to respond; Fillippelli never mentioned the nomination to Plaintiff. *See id.* On August 2, 2018, Omtvedt informed Plaintiff that the third-party review was complete, that they had found no evidence of harassment or retaliation, and the case was being closed. *See id.* ¶ 30. On August 28, 2018, Plaintiff filed a complaint with the Department of Fair Employment and Housing ("DFEH") and obtained an immediate right-to-sue. *See id.* ¶33.

In approximately September 2018, Plaintiff's physician placed Plaintiff on a leave of absence due to Plaintiff's anxiety and depression. *See id.* ¶ 31. Prior to Plaintiff's December 3, 2018-scheduled return to work, Wells Fargo reached out to Plaintiff to inform him of the close of the investigation, to confirm that Plaintiff's new territory assignment would remain unchanged, and to confirm that Plaintiff would continue to report to Fillippelli. *See id.* Plaintiff resigned on December 3, 2018. *See id.*

C. Procedural Background

Plaintiff filed his Complaint in Los Angeles County Superior Court on May 15, 2019. *See* Notice of Removal at 1. On June 27, 2019, Defendants filed the Notice of Removal, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See generally id.* Because Fillippelli and Plaintiff are both California citizens, Defendants argue that Fillippelli should be disregarded as a fraudulently joined party. *See id.* On July 11, 2019, Plaintiff filed a Motion to Remand the case back to Los Angeles Superior Court. *See generally* MTR. On July 18, 2019, Defendants filed an opposition to the MTR. *See generally* Defendants' Opposition to MTR ("MTR Opp'n"), Docket No. 12. On August 5, 2019, Plaintiff filed a reply to the MTR Opp'n. *See generally* MTR Reply.[3]

**II.  Legal Standard**

For removal based on 28 U.S.C. § 1332 to be proper, the law requires that the parties be diverse and the amount in controversy exceed seventy-five thousand dollars. *See* 28 U.S.C. § 1332(a). The Supreme Court has interpreted the diversity statute to require "complete diversity" such that no defendant is a citizen of the same state as any plaintiff. *See Exxon Mobil Corp. v.*

---

[3] Defendants also filed a Motion to Dismiss Plaintiff's claims of sexual harassment and IIED on July 2, 2019. *See* Defendants' Notice of Motion and Motion to Dismiss Plaintiff's Second and Fourth Causes of Action, Docket No. 8. On July 18, 2019, Plaintiff filed an opposition to Defendants' Motion to Dismiss. *See generally* Plaintiff's Opposition to Defendants' Motion to Dismiss, Docket No. 13. On August 5, 2019, Defendants filed a reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, Docket No. 15.

*Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("[T]he presence . . . of a single plaintiff from the same [s]tate as a single defendant deprives the district court of original diversity jurisdiction.").

Defendants have the burden of demonstrating all the requirements for diversity jurisdiction. *See Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017). "[O]ne exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)). Under the Ninth Circuit's approach to this issue, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent," meaning that the defendant's citizenship may be ignored for diversity purposes. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

However, if a plaintiff has *any* possibility of establishing liability, a court must reject a fraudulent joinder argument. *See, e.g.*, *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) ("But 'if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'") (quoting *Hunter*, 582 F.3d at 1046); *see also Hunter*, 582 F.3d at 1044-45; *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998). "[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549. "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.*

"[T]he party invoking federal court jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against fraudulent joinder." *Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting *Hunter*, 582 F.3d at 1046). Not surprisingly, then, fraudulent joinder must be proven by clear and convincing evidence. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). In addition, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## III. Discussion

### A. <u>Motion to Remand</u>

Defendants argue that Plaintiff cannot state a claim against Fillippelli because Plaintiff's FEHA and IIED[4] claims – those claims to which Fillippelli is added as a defendant in addition to Wells Fargo – are time-barred and do not state a claim upon which relief may be granted. *See* Notice of Removal at 10-13. Therefore, Defendants argue, Fillippelli is a sham defendant, and Defendants rightfully removed this action. *See id.* As such, Defendants would have the Court affirm their Removal to this Court and deny Plaintiff's Motion to Remand.

1. Statute of Limitations

Under FEHA, a plaintiff must file an administrative complaint with DFEH within one year from the date upon which the alleged unlawful practice occurred. *See* Cal. Gov't Code § 12960(b); *id.* § 12960(d); *id.* § 12925(b); *see also Mullins*, 56 F.5d at 2 (holding that the plaintiff timely filed her FEHA harassment claim with DFEH in February 6, 1991 where the last alleged act of harassment occurred in June 1990, even though the specific act of alleged harassment was not contained within the complaint); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1058 (9th Cir. 2006) (noting that the plaintiff's April 22, 1999-filed FEHA claim with DFEH was timely where his alleged discriminatory termination occurred on April 23, 1998). "A court may grant relief in any [FEHA] action" that is brought "within one year after the filing of [the] complaint" with DFEH. *See* Cal. Gov't Code § 12965(a); *id.* §12965(c). The one-year statute of limitations governing FEHA matters commences from the date that DFEH issues a right-to-sue notice to the person claiming to be aggrieved. *Id.* § 12965(d)(1).

Defendants argue that because the 2015 Photo Incident occurred in approximately August 2015, and Plaintiff did not file his claim with the Department of Fair Employment and Housing ("DFEH") until August 28, 2018, Plaintiff's FEHA claim is time-barred. However, Defendants' focus on the 2015 Photo Incident is an overly-narrow characterization of Plaintiff's claims. In addition to Plaintiff's argument that he can allege in an amended complaint that Fillippelli made the aforementioned "suck" comment in Plaintiff's office, and subsequently reassigned Plaintiff's Brentwood business, cut Plaintiff's pay, and refused to acknowledge Plaintiff's Leadership Excellence Award nomination, all within 2018. Plaintiff filed his complaint with DFEH on August

---

[4] The Court will not address Defendants' arguments that Plaintiff's IIED claim should be dismissed because, to the extent the Court addresses the arguments that Plaintiff's FEHA claim is time-barred and fails to state a claim upon which relief may be granted, Plaintiff's IIED claim is derivative. *See* Notice of Removal at 12-14. Accordingly, the Court does not have jurisdiction pursuant to 28 U.S.C. § 1332(a) to address Defendants' only remaining argument that Plaintiff's IIED claim is barred by the Workers' Compensation Act.

28, 2018 – no more than eight months following Fillippelli's alleged statement to Plaintiff – and received an immediate right to sue. *See* MTR at 3; Complaint ¶ 33. This purported fact alone is sufficient to show that it is *possible* with amendment that Plaintiff could assert a timely harassment claim against Defendants. Therefore, Defendants have not met their heavy burden of establishing that Fillippelli was fraudulently joined.

    2.   Failure to State a Claim

Defendants also argue that Fillippelli is a sham defendant because Plaintiff cannot allege a FEHA claim against him. There are two relevant theories of harassment under FEHA: quid pro quo and hostile work environment. *See Mullins v. Campbell Soup Co.*, 56 F.3d 72, 3 (9th Cir. 1995).

    i.   Quid Pro Quo

As to the quid pro quo theory, Defendants argue that even if Plaintiff can amend his complaint to add the sucking statement, such a comment is not an implicit request for a sexual exchange. *See* MTR Opp'n at 8. They reason that Fillippelli made the comment "*after* he had already made the decision to add a 'top performing employee' to Plaintiff's team." *Id.* Defendants continue that Plaintiff does not allege that Fillippelli made any further comments and that Plaintiff did not complain about the statement to HR. *Id.*

The fundamental problem with Defendants' arguments, however, is that they ignore the current posture of this case. At this stage, the Court is trying to determine whether it is *possible* that Plaintiff can state a sexual harassment claim against the non-diverse Fillippelli. *See Grancare*, 889 F.3d at 548-49. Reading the allegations in the Complaint and the additional facts in the declaration in the light most favorable to Plaintiff, the Court would conclude that it is clearly possible for Plaintiff to state a quid pro quo claim against Fillippelli. As alleged, Fillippelli had previously grabbed Plaintiff's penis. *See* Complaint ¶ 9. Fillippelli reminded Plaintiff of this incident years later after Fillippelli had become Plaintiff's supervisor. *Id.* ¶ 10. Then, in early-2018, Fillippelli made a comment to Plaintiff referencing sexual conduct between the two. *See* Chesler Decl. ¶ 3(b). Plaintiff expressed his disinterest in Fillippelli, responding "that's creepy." *Id.* Thereafter, Fillippelli stopped attending Plaintiff's meetings and ultimately cut Plaintiff's pay. *See* Complaint ¶¶ 16-17. One plausible conclusion from these alleged facts is that Fillippelli enforced negative consequences upon Plaintiff because of Plaintiff's spurning of Fillippelli's sexual advance. Therefore, Defendants have not met their burden of establishing that Fillippelli

was fraudulently joined.

ii. Hostile Work Environment

Defendants argue that, but for the unalleged "suck" comment, Plaintiff's alleged harassment constitutes no more than personnel management actions. *See* MTR Opp'n at 9-11. FEHA harassment claims do not comprise actions of a type necessary to business and personnel management. *See Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244-45 (9th Cir. 2013) (holding that the plaintiff's FEHA harassment claim based on a co-worker's instructing the plaintiff to perform work-related assignments, criticism with the store's merchandise display, and disagreement with the way the plaintiff stored repair parts constituted conduct relating to business operations and not harassment under FEHA). Defendants argue that because Plaintiff's FEHA claim is based upon Fillippelli's commonly-necessary personnel-management actions – *e.g.*, determining job or project assignments, provision of support, and meeting attendance decisions – Plaintiff fails to state a viable FEHA claim. *See* Removal, at 10. However, what Defendants fail to recognize is that even one instance of harassment can be sufficient. *See* Cal. Gov't Code § 12923(b). Moreover, personnel management actions can still constitute harassment to the extent the actions send a harassing message. *See Martinez v. Michaels*, No. CV 15-02104 MMM (Ex), 2015 WL 4337059, at *2, 7 (C.D. Cal. July 15, 2015) (holding that the plaintiff's managers' alleged failure to investigate matters involving employee racism directed at the plaintiff could support a finding that some of the managers' actions were not strictly personnel management decisions). As such, based on the alleged "suck" comment, and the fact that such claims are rarely determined as a matter of law, Defendants have not satisfied their burden of establishing that Fillippelli is a fraudulent defendant.

Because Plaintiff can amend his Complaint to include an allegation that Fillippelli made a non-work-related statement to Plaintiff within a year of Plaintiff's DFEH filing, the Court would find that Plaintiff could state a viable FEHA harassment claim against Fillippelli. It follows that Fillippelli is not a fraudulently-joined sham defendant. As such, Fillippelli's California citizenship destroys diversity pursuant to 28 U.S.C. § 1332(a), and the Court would grant Plaintiff's Motion to Remand this action to Los Angeles County Superior Court.[5]

---

[5] Because Defendants have failed to establish Fillippelli was fraudulently joined on Plaintiff's harassment claim, there is not complete diversity. As such, the Court need not reach the parties' arguments regarding Plaintiff's IIED claim.

B. <u>Attorney Fees</u>

Plaintiff asks the Court to award attorney fees pursuant to 28 U.S.C. § 1447(c). Upon an order remanding a case to state court, a district court may award attorney fees only where the removing party lacked an objectively reasonable basis for the removal. *See* 28 U.S.C. § 1447(c); *see also Martin v. Franklin Capital Corp.*, 546 U.S. 132, 132 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Rather, the Court should assess "whether the relevant case law clearly foreclosed the defendant's basis of removal . . . by looking to the clarity of the law at the time of removal." *Id.* at 1066 (citing *Martin*, 546 U.S. at 141). Although the arguments in Defendants' Removal ultimately lack merit, the Court would decline to grant Plaintiff's request for attorney fees. *See Lussier*, 518 F.3d at 1065 (declining to grant the plaintiffs' request for attorney fees even though there was "no question" that the defendant's fraudulent joinder arguments "were losers"); *see also Hayes v. TJX Cos., Inc.*, No. 2:17-cv-07182-ODW-JC, 2018 WL 619876, at *6 (C.D. Cal. Jan. 29, 2018) (declining to grant the plaintiff's request for attorney fees where the defendants' basis for removal was based solely on the argument that the plaintiff did not have any claim against the diversity-destroying party, and the plaintiff's claim was not strong but nonetheless presented sufficient allegations to preclude application of the fraudulent joinder doctrine). Simply put, Plaintiff's post-removal declaration that he could allege additional facts that would clearly fall within the statute of limitations completely changed the state of this case. *Defendants cannot be held responsible for Plaintiff's un-pleaded facts*. Accordingly, the Court would deny Plaintiff's request for attorney fees.

IV. **Conclusion**

Based on the foregoing discussion, the Court would grant Plaintiff's Motion to Remand and would remand this action to Los Angeles County Superior Court forthwith.[6] The Court would deny Plaintiff's request for attorney fees.

---

[6] Because the Court remands this action, it will not address Defendants' Motion to Dismiss.